IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

BRIAN JAMES KEEPER,

    Plaintiff,

v.                                                   Civil Action No. 5:08CV143
                                                                (STAMP)
JAMES DAVIS, individually and in
his Administrative Capacity as the
Elected Prosecutor of
Hancock County, West Virginia,
HANCOCK COUNTY, a political subdivision
of the State of West Virginia,
THE WEST VIRGINIA DEPARTMENT OF
HUMAN SERVICES, THE STATE OF WEST VIRGINIA,
MULTIPLE JOHN DOES and MULTIPLE JANE DOES,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO DISMISS BY DEFENDANTS
JAMES DAVIS AND HANCOCK COUNTY,
GRANTING MOTION TO DISMISS BY DEFENDANT
WEST VIRGINIA DEPARTMENT OF HUMAN SERVICES
AND GRANTING MOTION TO DISMISS BY DEFENDANT
STATE OF WEST VIRGINIA**

I.  Procedural History

The pro se[1] plaintiff, Brian James Keeper ("Keeper"), filed a civil rights action in this Court against several defendants, including James Davis (individually and in his administrative capacity as the elected prosecutor of Hancock County, West Virginia), Hancock County, the West Virginia Department of Human Services, the State of West Virginia, and multiple John Does and

---

[1] Pro se – "One who represents oneself in a court proceeding without the assistance of a lawyer. Black's Law Dictionary 1341 (9th ed. 2009).

Jane Does. Keeper alleges that the defendants have violated his federal civil rights under 42 U.S.C. § 1983 in connection with a state criminal prosecution brought against him in the Circuit Court of Hancock County, West Virginia. He also asserts claims for false arrest, abuse of discretion, abuse of process, speedy trial, discovery violations, excessive bail, banishment, and civil conspiracy.

Defendants James Davis ("Davis") and Hancock County jointly filed a motion to dismiss on the grounds that Davis is entitled to absolute prosecutorial immunity and that Hancock County is not subject to suit under § 1983 because it not a "person" within the meaning of that statute. Thereafter, defendant West Virginia Department of Human Services and defendant State of West Virginia, separately, filed motions to dismiss. On March 16, 2009 and again on April 9, 2009, this Court entered an order pursuant to <u>Davis v. Zahradnick</u>, 600 F.2d 458, 460 (4th Cir. 1979), and <u>Roseboro v. Garrison</u>, 528 F.2d 309, 310 (4th Cir. 1975), advising Keeper of his right to file responsive material and to alert him to the fact that his failure to so respond might result in the entry of an order of dismissal. To date, Keeper has filed no response, nor has he otherwise communicated with the Court regarding the motions to dismiss.

This Court has carefully reviewed the defendants' motions and related memoranda, and because Keeper is <u>pro se</u>, has liberally

construed Keeper's complaint. See Haines v. Kerner, 404 U.S. 519 (1971) (holding pro se complaint to less stringent standards than formal pleadings drafted by lawyers). After considering the defendants' briefs and the applicable law, this Court finds, for the reasons that follow, that the defendants' motions to dismiss must be granted.

## II. Facts

In his complaint, Keeper alleges that in September 2007, Hancock County Prosecutor James Davis caused Keeper to be charged by a grand jury with sexual abuse by a custodian, sexual assault in the first degree, and incest, all in violation of West Virginia law. Several counts of the indictment failed to allege that the charged violations occurred in Hancock County. Those counts were dismissed upon Keeper's motion. Davis then moved to dismiss the criminal action without prejudice.

According to Keeper, Davis then immediately wrongfully obtained a warrant for Keeper's arrest, which arrest was executed in front of the press by the Hancock County Sheriff's Department as Keeper departed the circuit court after dismissal of the indictment. Keeper alleges that Davis announced to the press that the reason he had Keeper re-arrested was to keep him in the system. Upon a motion by Davis, that case, too, was dismissed without prejudice. Keeper was ultimately re-indicted by a grand jury in

April 2008 on the same charges as alleged in the initial criminal action.

Keeper complains that both the September 2007 and April 2008 indictments presented by Davis to the grand juries charged Keeper with offenses allegedly committed when Keeper was still a juvenile, in violation of Chapter 49 of the West Virginia Code. Keeper further asserts that Davis gave press interviews providing details about the alleged juvenile offenses, also in violation of Chapter 49 of the West Virginia Code.

Upon a motion by Keeper, the trial court held that the grand jury lacked jurisdiction to consider juvenile offenses and dismissed without prejudice those counts of the indictment charging Keeper with the offenses he allegedly committed before reaching the age of majority. Keeper claims that Davis then had a juvenile petition brought against him in the Hancock County Juvenile Court. That action was also dismissed without prejudice. As of the date the complaint was filed in this action, no juvenile charges had been re-filed against Keeper.

Finally, Keeper alleges that throughout the various proceedings against him, Davis failed to disclose material exculpatory or impeachment evidence. He also alleges that defendant West Virginia Department of Human Services conspired with Davis by failing to release Keeper's records.

4

Keeper's complaint sets forth nine causes of action: (1) deprivation of civil and constitutional rights, in violation of 42 U.S.C. § 1983; (2) false arrest; (3) abuse of discretion; (4) abuse of process; (5) speedy trial; (6) discovery violations; (7) excessive bail; (8) banishment; and (9) civil conspiracy. Keeper seeks monetary damages and attorney's fees.

### III. Applicable Law

In assessing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept the factual allegations contained in the complaint as true. Advanced Health Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Dismissal is appropriate pursuant to Rule 12(b)(6) only if "'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.'" Id. at 143-44 (quoting Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)); see also Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989).

Stated another way, it has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294 (2d ed. 1990). The Rule 12(b)(6) motion

also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact.  Id. § 1356, at 298.  For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a).  Id. § 1357, at 304, 310.

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only in very limited circumstances.  Rogers, 883 F.2d at 325.  A dismissal under Rule 12(b)(6) is granted only in cases in which the allegations raised in the complaint clearly demonstrate that the plaintiff does not have a claim and that no set of facts would support the plaintiff's claim. 5A Wright & Miller, supra § 1357, at 344-45.

In this case, the non-moving party failed to respond to defendants' motions to dismiss after notice and sufficient time to respond.  However, Keeper's failure to file a response does not relieve defendants from the burden imposed upon the moving party. See Custer v. Pan Am. Life Ins. Co., 12 F.3d 410 (4th Cir. 1993) (requiring review on the merits of a summary judgement where non-moving party had failed to respond).  The court in Custer held that while "the failure to respond to a summary judgment motion may

leave uncontroverted those facts established by the motion, the moving party must still show the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)). Although the motions currently before this Court are motions to dismiss rather than motions for summary judgment, this Court believes it is appropriate to review the motions on their merits.

IV. Discussion

A. Defendant James Davis

Defendant James Davis contends that he must be dismissed from this suit because he is entitled to absolute immunity. As support for this proposition, Davis cites Imbler v. Pachtman, 424 U.S. 409 (1976). There, the United States Supreme Court held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." Id. at 431. In Lyles v. Sparks, 79 F.3d 372, 377 (4th Cir. 1996), the United States Court of Appeals for the Fourth Circuit found that the presentation of the government's case before the grand jury, as a prosecutorial function, falls within the protection afforded by absolute immunity.

However, absolute prosecutorial immunity is limited to the initiation and prosecution of a criminal case. See Imbler, 424 U.S. at 430-31. In Imbler, the Court expressly left open the question of whether absolute immunity applies to "those aspects of

7

the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of an advocate." Id. When performing investigative or administrative functions, a prosecutor is entitled only to qualified immunity. Ehrlich v. Giuliani, 910 F.2d 1220, 1222 (4th Cir. 1990). Qualified immunity generally applies "to actions extraneous to the judicial process." Id. at 1223 n.3. In determining whether the conduct of which Keeper complains is advocacy versus administrative or investigative, this Court first considers the allegations in Keeper's complaint relating to his § 1983 claim, and then considers the allegations implicating the remaining causes of action.

1. Allegations Relating to Keeper's § 1983 Claims

Keeper has asserted several allegations implicating his claims under § 1983. All of Keeper's allegations concerning Davis's conduct, except those relating to the press conferences, fall within the protection of absolute immunity. As to the allegations relating to the press conferences, the proper analysis is qualified immunity.

a. Absolute Immunity

Davis appears to be entitled to absolute immunity under the factual allegations in Paragraph Nos. 3, 4, 6, 8, 10, 12, 14, 15, 16, 17, and 18 of the complaint because the conduct described therein is properly characterized as prosecutorial advocacy. See Imbler v. Pachtman, 424 U.S. 409, 431 n.33 (1975) (listing as

8

examples of advocacy duties "whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present"); Buckley v. Fitzsimmons, 509 U.S. 259, 270-71 (1993) (citing Burns v. Reed, 500 U.S. 478 (1991) (participating in a probable cause hearing is protected by absolute immunity as advocacy function, but giving legal advice to police is not)); Kalina v. Fletcher, 522 U.S. 118, 129, 130-31 (1997) (filing motion for arrest warrant is advocacy protected by absolute immunity, whereas acting as a complaining witness by certifying accuracy of factual allegations supporting probable cause is not); Springmen v. Williams, 122 F.3d 211, 213 (4th Cir. 1997) (absolute immunity applies where prosecutor instructs another to initiate prosecution); Lyles v. Sparks, 79 F.3d 372, 377 (4th Cir. 1997) (knowing use of perjured testimony and suppression of material evidence before grand jury is protected by absolute immunity); Carter v. Burch, 34 F.3d 257, 262 (4th Cir. 1994) (failure to disclose material evidence is decision made in role as advocate and therefore accorded absolute immunity). This Court also believes that the factual allegations set forth at Paragraph No. 7 (Davis's orchestrating Keeper's arrest for the express purpose of "keeping him in the system") fall within the absolute immunity protection. Further, this Court believes that the conduct alleged at Paragraph

No. 9 (Davis's failure to re-call the grand jury) is properly characterized as a decision not to re-indict. Under <u>Imbler v. Pachtman</u>, 424 U.S. 409 (1975), a prosecutor's decision to indict or re-indict is protected by absolute immunity.

      b.   <u>Qualified Immunity</u>

The factual allegations set forth in Paragraph Nos. 11 and 13 (relating to Davis's press interviews) are subject to a qualified immunity analysis. <u>See</u> <u>Buckley</u>, 509 U.S. at 277-78 (proper analysis for media statements is qualified immunity rather than absolute immunity because media statements "have no functional tie to the judicial process"). Qualified immunity is an affirmative defense. <u>Gomez v. Toledo</u>, 446 U.S. 635 (1980). Although Davis has not asserted qualified immunity as a defense in this action, "no principle forbids a court to notice that a defense exists, is bound to be raised, and is certain to succeed when raised." <u>Buckley v. Fitzsimmons</u>, 20 F.3d 789, 793 (7th Cir. 1994) (determining that the court could consider the issue of qualified immunity even though it had not been raised as an affirmative defense).

Under the doctrine of qualified immunity, government officials are not subject to liability for civil damages for conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>See</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). In <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001), the Supreme Court of the United States

established a rigid two-step sequence for determining a defendant's entitlement to qualified immunity. First, "a court must decide whether the facts that a plaintiff has alleged (see Fed. R. Civ. P. 12 (b)(6), (c)) or shown (see Fed. R. Civ. P. 50, 56) make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001) (internal citations omitted)). Without modifying the elements of the qualified immunity analysis, the Supreme Court recently held that courts no longer need to adhere to the rigid sequence of the analysis established in Saucier, but may instead determine which prong should be addressed first based upon the facts of the case before it. See Pearson v. Callahan, 129 S. Ct. 808, 815-16, 818 (2009).

Here, this Court finds that it need not proceed to the second prong of the qualified immunity analysis because Keeper fails to allege any violation of a federal statutory or constitutional right. Keeper claims only that Davis gave press conferences releasing details of the plaintiff's juvenile criminal history record, in violation of West Virginia statutory law. He does not allege any constitutional or statutory violation under federal law relating to the press conferences. Further, to the extent that

11

Keeper claims damage to his reputation as a result of the negative information released by Davis to the media, "stigmatization or reputational damage alone, no matter how egregious, is not sufficient to support a § 1983 cause of action." McGhee v. Draper, 639 F.2d 639, 642 (10th Cir. 1981). Keeper's allegations fail to plead any federal constitutional or statutory violation resulting from the statements Davis made to the press. Therefore, his cause of action against Davis under § 1983 fails as a matter of law.

    2. <u>Allegations Relating to Remaining Causes of Action</u>

As for the remaining counts of Keeper's complaint, Davis is entitled to absolute immunity. Keeper's claims for false arrest (Count 2) and abuse of discretion (Count 3) fall squarely within <u>Imbler</u>'s recognition that decisions to indict are afforded absolute prosecutorial immunity. See <u>Imbler</u>, 424 at 431 n.33. Additional support may be found in <u>Lee v. Willins</u>, where the United States Court of Appeals for the Second Circuit concluded that the prosecutor in that action, who had sought and obtained five indictments against the plaintiff for the same crime, was entitled to absolute immunity. See <u>Lee v. Willins</u>, 617 F.2d 320 (2d Cir. 1980).

Two other cases from the Second Circuit also seem applicable to Keeper's abuse of discretion claim (Count 3), as well as to his abuse of process claim (Count 4), in finding that improper motive or state of mind is irrelevant to the absolute immunity

entitlement.  See Bernard v. County of Suffolk, 356 F.3d 495, 505 (2d Cir. 2004); Shmueli v. City of New York, 424 F.3d 231 (2d Cir. 2005); see also Schamp v. Shelton, No. 06-4051, 2006 WL 2927523, *5 (D. Kan. Oct. 12, 2006 ).

The United States Courts of Appeals for the Fifth and Eighth Circuits have addressed absolute immunity in the context of claims for speedy trial deprivations, a claim which Keeper also raises in his complaint (Count 5).  Both courts found that such claims against a prosecutor are barred by absolute immunity.  See Tarter v. Hury, 646 F.2d 1010, 1012 (5th Cir. 1981); Ledwith v. Douglas, 568 F.2d 117, 119 (8th Cir. 1978).  This Court agrees.

Absolute immunity also protects Davis from Keeper's claim that Davis intentionally withheld material evidence (Count 6).  See Carter, 34 F.3d at 262 (absolute immunity under Imbler applies to prosecutor's decision to withhold materially exculpatory evidence). Keeper's excessive bail claim (Count 7) would also seem to be barred by absolute immunity.  See Root v. Liston, 444 F.3d 127, 131 (2d Cir. 2006) (advocacy in connection with a bail application is protected under doctrine of absolute prosecutorial immunity) (citing Pinaud v. County of Suffolk, 52 F.3d 1139, 1149 (2d Cir. 1995)); Halpern v. City of New Haven, 489 F. Supp. 841, 843 (D. Conn. 1980) (prosecutor's conduct in setting bond "falls squarely within the area protected by Imbler").

Additionally, Davis appears to be protected from liability for Keeper's banishment claim (Count 8) under the doctrine of absolute immunity. The holding in <u>Root</u> suggests that absolute immunity would apply to the banishment claim if the prosecutor's action in seeking banishment is deemed analogous to the advocacy function of seeking bail. <u>See</u> <u>Root</u>, 444 F. 3d at 131. This Court believes that the banishment claims is analogous to the advocacy function of seeking bail and, therefore, that absolute immunity protects Davis's actions relating to the banishment claim.

Finally, this Court finds that absolute immunity applies to Keeper's conspiracy claim (Count 9). <u>See</u> <u>Shmueli</u>, 424 F.3d at 237-38 (conduct taken pursuant to a conspiracy does not eliminate protected afforded by absolute immunity); <u>Schamp</u>, 2006 WL 2927523, at *5 (same).

In sum, this Court finds that Davis is entitled to absolute prosecutorial immunity against all of Keeper's claims except those relating to the press conference. As to those claims, under the qualified immunity analysis, Keeper has failed to state a viable claim for any federal constitutional or statutory violations. Thus, the motion to dismiss James Davis must be granted, and the claims against him dismissed.

B. <u>Defendant Hancock County</u>

Defendant Hancock County is not a proper party to this suit. A local governing body is subject to suit under § 1983. <u>Monell v.</u>

Department of Social Services, 436 U.S. 658 (1978). However, under West Virginia law, the local governing body for a county within the state is the county commission. See W. Va. Code § 7-1-1. Article I of Chapter 7 of the West Virginia Code provides, in relevant part:

> The county commission, formerly the county court, tribunal or county council in lieu thereof, of every county within the State of West Virginia shall be a corporation by the name of "The County Commission of .......... County", or "The County Council of .......... County" by which name it may sue and be sued, plead and be impleaded and contract and be contracted with.

W. Va Code § 7-1-1(a). Here, Keeper has named as a defendant "Hancock County," not the governing body of Hancock County as required under Monell.

However, even if Keeper had named the County Commission of Hancock County as a defendant, his claims would nevertheless require dismissal because he has failed to set forth sufficient allegations to state a viable § 1983 claim against this defendant. The allegations set forth in a complaint must supply sufficient information to enable a defendant to respond. See Walker v. Prince George's County, --- F.3d ---, No. 08-1462, 2009 WL 2343614, at *5 (4th Cir. July 30, 2009) (citing Ashcroft v. Iqbal, --- 556 U.S. ---, 129 S. Ct. 1937 (2009) (allegations permitting inference of nothing more than the possibility of misconduct are insufficient to state a § 1983 claim against municipality)); see also Chao v. Rivendell Woods, Inc., 415 F.3d 342, 349 (4th Cir. 2005). Here,

15

Keeper has alleged only that Hancock County had a custom or policy that resulted in the deprivation of his constitutional rights.  He provides no additional factual detail identifying the custom or policy of which he complains or how such custom or policy deprived him of his constitutional rights.  This assertion lacks sufficient information to allow the defendant to respond, and it permits, at most, an inference of merely the possibility of misconduct. Accordingly, the motion to dismiss Hancock County must be granted.

C.   Defendant West Virginia Department of Human Services

Defendant West Virginia Department of Human Services ("WVDHS") argues that the claims against it must be dismissed because Keeper has failed to state a claim upon which relief can be granted.  This Court agrees.

First, the alleged violations concerning improper withholding of Keeper's records occurred during Keeper's criminal case. Accordingly, any relief for which he believes he is eligible should have been requested within the criminal proceedings, and his remedy would be entitlement to a new trial, not civil damages.  See State v. Youngblood, 650 S.E.2d 119 (2007) (holding that criminal defendant is entitled to new trial after determination that favorable impeachment evidence has been withheld).

Second, Keeper has not set forth sufficient allegations to state a § 1983 claim against WVDHS.  As discussed above, a plaintiff must provide adequate factual information to enable a

16

defendant to respond. See Walker, --- F.3d ---, No. 08-1462, 2009 WL 2343614, at *5; Chao v. Rivendell Woods, Inc., 415 F.3d at 349. Here, Keeper has alleged only that WVDHS had a custom or policy that resulted in the deprivation of his constitutional rights and that WVDHS failed to turn over his records when requested to do so by Keeper's defense counsel. These allegations contain insufficient information to allow WVDHS to respond, and they permit nothing more than an inference of the possibility of misconduct.

Finally, WVDHS argues that Keeper has failed to provide it or the West Virginia Attorney General with the pre-suit notice required under West Virginia Code § 55-17-3. Keeper has not provided this Court with any information or argument to the contrary. Such pre-suit notice is a jurisdictional prerequisite to bringing a civil action against a state agency. See Motto v. CSX Transp., Inc., 647 S.E.2d 848, 855 (W. Va. 2007). Here, Keeper has not demonstrated, or even alleged, that he has met this statutory requirement.

Based upon the foregoing, Keeper's claims against West Virginia Department of Human Services must be dismissed. Therefore, the motion to dismiss by West Virginia Department of Human Services will be granted.

D. Defendant State of West Virginia

The State of West Virginia must be dismissed from this action based upon sovereign immunity. The Eleventh Amendment to the

United States Constitution prohibits federal courts from entertaining suits brought by citizens against any state: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. "Although the Amendment does not literally apply to actions brought against a State by its own citizens, the Amendment has long been held to govern such actions." <u>Florida Dept. of State v. Treasure Salvors, Inc.</u>, 458 U.S. 670, 683 (1982). Thus, as a general matter, a suit may not proceed directly against a state or against an agency or department of the state. <u>Alabama v. Pugh</u>, 438 U.S. 781 (1978).

However, a state may waive its sovereign immunity and consent to suit in federal court. Such consent must be expressly and unequivocally made. <u>Port Authority Trans-Hudson Corp. v. Feeney</u>, 495 U.S. 299, 305 (1990). Nevertheless, the mere fact that a state has waived its sovereign immunity from suits in its own courts is not a waiver of its Eleventh Amendment immunity in a federal forum. <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 99 (1984). Absent such a waiver, claims in federal court against a state entity are barred under the Eleventh Amendment sovereign immunity.

Notwithstanding sovereign immunity of the states, however, suits for damages against state officers in their individual capacities for violation of federal law are not deemed actions against the state. Accordingly, such action are not barred by the Eleventh Amendment. See Scheuer v. Rhodes, 416 U.S. 232, 237 (1974); Hafer v. Melo, 502 U.S. 21, 31 (1991).

Here, Keeper names the State of West Virginia as a defendant, but he sets forth no allegations involving any state officer. Therefore, this Court is unable to conclude that Keeper has asserted claims against a state officer acting in an individual capacity. Moreover, as relief, Keeper seeks monetary damages directly against the State of West Virginia and its tax entities. Construing Keeper's allegations liberally, this Court concludes that he has stated claims only against the state, an entity which is entitled to Eleventh Amendment sovereign immunity and, therefore, may not be sued in federal court. Nothing on the record before this Court suggests that the State of West Virginia has waived sovereign immunity, nor has the plaintiff asserted any such arguments. Thus, this Court finds that the State of West Virginia must be dismissed as a party to this action. Accordingly, the motion to dismiss the State of West Virginia will be granted

V. Conclusion

For the reasons stated above, defendants James Davis and Hancock County's Motion to Dismiss is GRANTED, defendant West

Virginia Department of Human Services' Motion to Dismiss is GRANTED, and defendant State of West Virginia's Motion to Dismiss is GRANTED. Accordingly, it is ORDERED that the plaintiff's complaint be, and hereby is, DISMISSED WITH PREJUDICE. Finally, it is ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the <u>pro se</u> plaintiff by certified mail and to counsel of record herein.

DATED:   August 7, 2009

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE